**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAY T. DINO, et al.,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 1:08-1493** |
| v. | : | **(KANE, C.J.)** |
| | | **(MANNION, M.J.)** |
| **COMM. of PENNSYLVANIA, et al.,** | : | |
| **Defendants** | : | |

**O R D E R**

On May 5, 2011, the instant action was referred to the undersigned for the purpose of holding a discovery conference to assist counsel in resolving discovery disputes which had arisen between the parties. (Doc. No. 68). That conference was held on May 19, 2011, at which the court orally decided a majority of the discovery issues presented to the court as reflected on the record. (Doc. No. 75).

The sole discovery issue remaining for consideration by the undersigned is whether the plaintiffs are entitled to have the defendants produce a log of disciplinary suspensions for all employees listed in the sixteen classifications of individuals provided for in Section 4.1.1 of the Department of Corrections' Human Resources and Labor Relations Procedures Manual, Section 5, Suspension Without Pay for Exempt Employees Under the Fair Labor Standards Act.

After hearing the parties' positions on the issue at the discovery conference, the court agreed with the defense and indicated that it would not require them to produce anything other than the information related to the plaintiff class, including information with respect to whether individuals were suspended as well as the backup material that would describe why they were suspended and how the suspension came about. (Doc. No. 75, pp. 39-45). However, upon request of the plaintiffs, the court agreed to allow briefing on the matter. Letter briefs have been received from the plaintiffs, (Doc. No. 74), and the defendants, (Doc. No. 76).

Upon review of the briefs filed in this matter, the court stands by its original ruling and will deny the plaintiffs' request to have the defendants produce a log of disciplinary suspensions for all employees listed in the sixteen classifications. In their brief, the plaintiffs argue that, in 2002, the Department of Corrections, ("DOC"), issued a policy, ("Suspension Policy"), which governs disciplinary suspensions of sixteen classifications of management employees, including Correctional Officer 3, ("CO3s"), and Correctional Officer 4, ("CO4s"). In this action where the plaintiff class consists only of individuals in the CO3 classification, the plaintiffs sought discovery from the defendants relating to the disciplinary suspensions of persons in each of the sixteen classifications. The defendants agreed to

produce the data for members of the plaintiff class, but not the other classifications.

The plaintiffs argue that a key issue in this litigation is the applicability of one or more exemptions under the Fair Labor Standards Act, ("FLSA"), to the plaintiff class, and that application of any exemption is a matter of affirmative defense on which the employer has the burden of proof. The plaintiffs argue that one of the factors that govern whether an employer has an "actual practice" of making improper deductions is whether the employer has a clearly communicated policy permitting or prohibiting improper deductions. See 29 C.F.R. §541.603. The plaintiffs argue that the Suspension Policy at issue permits disciplinary suspensions of persons in the sixteen classifications of any length, for any reason, and therefore is a "clearly communicated policy permitting" improper deductions. However, this is only one of several factors set forth in §541.603, and the plaintiffs argue that because the burden of proving an exemption is the defendants' to carry, a broad limitation of discovery on this issue will "unfairly handcuff the Plaintiffs from contesting Defendant's assertion of the affirmative defense."

The plaintiffs argue that information regarding the suspensions in all sixteen classifications is essential for three reasons: (1) what managers impose such discipline and where this discipline is imposed may shed light on

the practices that prevail from one institution to another; (2) CO4s are a level above CO3s and report in the same chain of command to managers in common and, therefore, a manager who imposes a three-day suspension upon a CO4 for an offense that does not satisfy an exception under §541.602(b)[1], would likely impose a similar penalty on a CO3; and (3) even as to those CO3s who are not members of the plaintiff class, the principal factor is whether there is an "actual practice" of making improper deductions and the regulations, including 29 C.F.R. §541.603(b)[2], require looking beyond

---

[1]Although there are several exceptions set forth in §541.602(b), the plaintiffs argue that the most relevant for purposes of the instant action allow for the deduction from the pay of exempt employees for "penalties imposed in good faith for infractions of safety rules of major significance" and "unpaid disciplinary suspensions of one or more full days imposed in good faith for infractions of workplace conduct rules [that are] imposed pursuant to a written policy applicable to all employees." See 29 C.F.R. §§541.602(b)(4), (5).

[2]This section provides:
(b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. Employees in different job classifications or who work for different managers do not lose their status as exempt employees. Thus, for example, if a manager at a company facility routinely docks the pay of engineers at that facility for partial-day personal absences, then all engineers at that facility whose pay could have been improperly docked by the manager would lose the exemption; engineers at other facilities or working for other
(continued...)

the immediately affected employees.

In response, the defendants argue that the opt-in class at hand includes only one job classification, the CO3s, and that information related to all other job classifications is irrelevant. The defendants argue that they have already produced information related to any disciplinary suspensions of the opt-in class members on which the plaintiffs can rely in attempting to prove that the DOC has not complied with the FLSA and applicable regulations.

As to any classification other than the CO3s of which the plaintiff class consists, the defendants argue that, under the FLSA's regulations, an employer who improperly suspends otherwise-exempt employees in a particular job classification may jeopardize the applicability of an exemption to other employees <u>in the same job classification</u>. 29 C.F.R. §541.603(a)(emphasis added). The defendants argue that those exemptions are only jeopardized within one job classification at a time regardless of how broad an employer's policy may be. The court agrees. In fact, the regulations specifically provide that, when employees in one job classification are improperly suspended, "[e]mployees in different job classifications or who work for different managers do not lose their status as exempt employee." <u>Id.</u>

---

[2](...continued)
managers, however, would remain exempt.

Thus, the practices which occurred with respect to the classifications outside of the CO3 classification would have no relevance here.

Further, the defendants argue that approximately 250 CO3s out of a potential class of nearly 800 have opted into this litigation. The defendants argue that they have produced documents related to any suspension of the plaintiff class for the three year period prior to the plaintiffs joining the instant lawsuit. The defendants argue, and the court agrees, that the suspension information for the opt-in plaintiffs is sufficient to determine whether the DOC had or has an "actual practice" of improperly suspending CO3s.

Finally, the defendants argue that this case has been conditionally certified as a collective action to determine whether the claims of a class of employees should be litigated collectively and not as separate claims. Approximately 250 employees have opted into the plaintiff class out of a potential 800 employees. The defendants should not be required to produce information regarding the employment circumstances of the entire potential class of nearly 800 employees when the information relating to the suspensions of those who have not opted into the plaintiff class is irrelevant to the collective action analysis.

For all of the foregoing reasons, the plaintiffs' request to compel the defendants to provide a log of disciplinary suspensions for all employees

listed in the sixteen classifications of individuals provided for in Section 4.1.1 of the Department of Corrections' Human Resources and Labor Relations Procedures Manual, Section 5, Suspension Without Pay for Exempt Employees Under the Fair Labor Standards Act, will be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1) the plaintiffs' request for discovery from the defendants of disciplinary suspensions of persons in the sixteen classifications provided for in the Suspension Policy, as cited above, is **DENIED**.

2) having resolved the motion (Doc. No. 67) referred to the undersigned, (Doc. No. 68) the case is to be returned to the Chief Judge.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: September 23, 2011**

O:\shared\ORDERS\2008 ORDERS\08-1493-05.wpd